UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.,

       Plaintiff,

v.

ASPEN RIDGE, LLC
d/b/a Hickory Ridge of Temperance
and CIENA HEALTH CARE
MANAGEMENT, INC. d/b/a Ciena
Healthcare Management, Inc. and
d/b/a Ciena Healthcare

       Defendants.
_____

File No. _____

Hon. _____

Magistrate Judge _____

Brad Dembs (P76692)
MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.
Attorney for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755
_____

**<u>COMPLAINT</u>**

# INTRODUCTION

1. Plaintiff, Michigan Protection and Advocacy Service, Inc. ("MPAS"), brings this action for declaratory and injunctive relief pursuant to 42 U.S.C. §§ 15041-15045, Developmental Disabilities Assistance and Bill of Rights Act of 2000 (DD); and 29 U.S.C. § 794e, the Protection and Advocacy of Individual Rights ("PAIR"), Program of the Rehabilitation Act of 1973.

2. MPAS challenges Defendants' failure to disclose documents and information relating to the abuse/neglect investigation of patients residing in its nursing home facilities.

3. This information was requested by Plaintiff and disclosure is required by the DD and/or PAIR Acts.

4. Regardless of the specifics of the individuals' disabilities, MPAS has access authority under either the DD or PAIR Act, or both.

5. MPAS is charged with the responsibility, both under federal and state law, to investigate allegations of abuse and neglect against persons with disabilities.

6. Defendants' failure to provide the documents and information at issue has interfered with Plaintiff's investigative responsibilities and resulted in Plaintiff being denied its rights pursuant to the PAIMI, DD, and

PAIR Acts to investigate the suspected incidents of abuse and neglect.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Plaintiff's federal claims are made pursuant to 42 U.S.C. §§ 15041-15045 and 29 U.S.C. § 794e.

9. Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201, 2202.

10. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b), as all of the events and omissions complained of below occurred in this district.

## PARTIES

11. Plaintiff, MPAS, is a Michigan non-profit corporation.

12. The Governor of Michigan has designated MPAS as the state's protection and advocacy system, pursuant to MCL 330.1931 with the responsibility to enforce and carry out the federal mandates under the PAIMI, DD, and PAIR Acts.

13. As the state's protection and advocacy system, MPAS has a duty to investigate allegations of abuse and neglect of persons with disabilities. MCLA 330.1931(2).

14. Upon information and belief, Defendant Aspen Ridge, LLC is a domestic limited liability company conducting business under the assumed name of Hickory Ridge of Temperance ("Hickory").

15. Upon information and belief, Defendant Ciena Health Care Management, Inc. is a domestic profit corporation conducting business under the assumed names of Ciena Healthcare Management, Inc. and Ciena Healthcare.

16. Upon information and belief, Hickory Ridge of Temperance, which Defendants own and operate, is a nursing home located in Temperance, Michigan, in Monroe County.

## FACTS

17. On or about September 30, 2013, MPAS learned of allegations of abuse/neglect against individuals who were patients at Hickory, through an abbreviated survey completed by the Michigan Department of Licensing and Regulatory Affairs, Bureau of Health Care Services.

18. The survey, dated September 6, 2013 identified the alleged victims only as Resident #102 and Resident #105.

19. Based on the abbreviated survey of Hickory, MPAS determined that Resident #102 had been diagnosed with physical disabilities, including aphasia and history of a stroke that resulted in her right arm being contracted.

20. According to the survey, Resident #102 sustained fractures to her right wrist and elbow. The examining physician determined that the injuries most likely occurred when a staff member was forceful with Resident #102's arm during application of a splint.

21. Based on the abbreviated survey of Hickory, MPAS determined that Resident #105 had been diagnosed with physical disabilities including history of a stroke with left-sided Hemiparesis and left arm contracture.

22. According to the survey, Resident #105 was subjected to rude and hostile treatment by a certified nursing assistant ("CNA") who threw a towel on Resident #105 while she was showering and left her unattended in the shower room, and who was also rough with her during transfers from her wheelchair to her bed.

23. Based on these facts, MPAS determined it had probable cause, as the state's protection and advocacy system, to open an investigation into the possible abuse and/or neglect of people with disabilities residing at Whitehall, specifically Resident #102 and Resident #105.

24. On October 1, 2013, an advocate from MPAS sent a letter to Hickory requesting specific records related to Resident #102 and Resident #105.

25. MPAS sent the letter by United States Postal Service Certified Mail (return receipt). It was received by Hickory on October 7, 2013, and signed for by Hickory employee Heidi Clark.

26. Defendants made no disclosure of records, nor acknowledged the request in any way.

27. On October 15, 2013, an advocate from MPAS sent a second records request letter to Hickory. The letter reiterated MPAS' access authority and the purpose of the request for records.

28. MPAS sent the letter by United States Postal Service Certified Mail (return receipt). It was received by Hickory on October 18, 2013, and signed for by Hickory employee Robert Moore.

29. As of the date of this filing, MPAS has not received any of the requested records, nor has there been any response from Defendants.

## COUNT I – VIOLATION OF THE DD ACT

30. Plaintiff incorporates and re-alleges paragraphs 1 through 29, as if fully set forth herein.

31. As Michigan's designated protection and advocacy system, MPAS has the right to access all records of individuals to which the DD Act applies when conducting abuse and neglect investigations. 42 U.S.C. § 15043.

32. The DD Act applies to Hickory Ridge of Temperance. 42 U.S.C. § 15043(2)(B).

33. Upon information and belief, the DD Act applies to Resident #102 and Resident #105 due to each patient's residence in a facility and their diagnoses. 42 U.S.C. § 15002(8).

34. Based on survey results, MPAS determined it had probable cause to open an investigation, as the state's protection and advocacy system, into the possible abuse and/or neglect of persons with disabilities. 42 U.S.C. § 5043(a)(2)(B).

35. This determination of probable cause is within the discretion of MPAS alone. *See Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689 (D. Ariz. 2000) (". . . the P&A is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.")

36. Defendants' failure to provide Plaintiff with the requested records, relating to the allegations of abuse and/or neglect of residents of Whitehall and Fenton, violates MPAS' rights under the DD Act, 42 U.S.C. § 15043.

37. The incidents at issue fall clearly within the Act's definitions of abuse or neglect. 45 C.F.R. § 1386.19.

38. P&A systems must have access to individual records "prepared or received in the course of providing intake, assessment, evaluation, education, training and other supportive services, including medical records, financial records, and monitoring and other reports prepared or received by a member of the staff of a facility that is providing care or treatment." 45 C.F.R. § 1386.22(b).

39. MPAS is also entitled to incident reports prepared by a facility rendering care or treatment, in whatever format they are kept. This includes reports that describe abuse, neglect, or injury occurring at

the facility, the steps taken to investigate the incidents, personnel records and supporting information relied upon in creating a report, and records describing persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings. 45 C.F.R. § 1386.22.

40. The DD Act requires prompt written justification if a request is denied for lack of authorization, as well as provision of contact information for a resident or his or her legal representative.

41. Defendants did not respond to MPAS' records requests in any way.

42. Defendants' actions frustrate, impinge, and prevent MPAS from meeting its responsibilities under federal and state law to investigate allegations of abuse and/or neglect of individuals with developmental disabilities.

43. MPAS has no adequate remedy at law.

## COUNT II – VIOLATION OF THE PAIR ACT

44. Plaintiff incorporates and re-alleges paragraphs 1 through 43, as if fully set forth herein.

45. As Michigan's designated protection and advocacy system, MPAS has the right to access all records of individuals to which the PAIR

9

Act applies when conducting abuse and neglect investigations. 29 U.S.C. § 794e, and 42 U.S.C. § 15043.

46. Upon information and belief, if the patients named above are not covered by the DD Act, they are covered under the PAIR Act. 29 U.S.C. § 794e(a)(1)(B).

47. Based on survey results, MPAS determined it had probable cause to open an investigation, as the state's protection and advocacy system, into the possible abuse and/or neglect of persons with disabilities.

48. This determination of probable cause is within the discretion of MPAS alone. *See Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689 (D. Ariz. 2000) (". . . the P&A is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.")

49. Defendants' failure to provide Plaintiff with the requested records, relating to the allegations of abuse and/or neglect of residents of Hickory Ridge of Temperance, violates MPAS' rights under the PAIR Act. 29 U.S.C. § 794e.

50. Defendants' actions frustrate, impinge and prevent MPAS from meeting its responsibilities under federal and state law to investigate allegations of abuse and/or neglect of individuals with disabilities.

51. MPAS has no adequate remedy at law.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

A. Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201, declaring that Defendants' actions and omissions violate the DD and/or PAIR Act(s) by:

    i) Denying Plaintiff access to patient records; and

    ii) Preventing MPAS from fully performing its statutory duty to investigate incidents of suspected abuse and/or neglect of individuals with disabilities;

B. Enter permanent injunctive relief, pursuant to 28 U.S.C. § 2202, requiring Defendants to provide MPAS any and all reports, documents, and records pertaining to the patients and alleged incidents in question;

C. Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of the DD and PAIR Acts;

D. Award Plaintiff costs; and

E. Order such other, further, or different relief as the Court deems equitable and just.

                                      Respectfully submitted,

Dated: December 19, 2013      By:  s/Brad Dembs
                                              Michigan Protection and Advocacy Service, Inc.
                                              4095 Legacy Parkway, Ste. 500
                                              Lansing, MI 48911
                                              (517) 487-1755
                                              bdembs@mpas.org
                                              P76692